IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| v. | * | **Crim. Case No.: SAG-05-61** |
| | * | **Civ. Case No. SAG-16-1781** |
| **NAKIE HARRIS,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Court has previously addressed two motions Defendant Nakie Harris filed seeking compassionate release. ECF 568, 601. Presently pending is Harris's motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, which he presently pursues in a self-represented capacity. ECF 486. This Court has carefully reviewed the motion, his supplemental filings, ECF 490, 518, 535, the Government's opposition, ECF 626, and Harris's reply, ECF 643. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Harris's motion will be denied.

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." While Harris's earlier compassionate release motions turned on some evaluation of the circumstances of his particular case, the instant motion presents a pure legal issue regarding his charges of conviction.[1]

---

[1] In the intervening months, this Court has received several letters of support from Harris's family members and friends. *See, e.g.*, ECF 631; ECF 632. Because the instant motion presents just a question of law, such letters are not pertinent to this Court's consideration.

In December, 2005, a jury convicted Harris and two co-defendants of six charges related to witness tampering and firebombing the home of a witness in an attempt to kill her. United States District Judge J. Frederick Motz imposed a total sentence of 720 months of incarceration for Harris, to be followed by a period of three (3) years of supervised release. ECF 184. Specifically, relevant to this motion, Harris received concurrent sentences totaling 240 months for Counts One (conspiracy to commit witness tampering), Two (witness tampering by attempted murder), Three (witness tampering by physical force or threat of physical force), and Six, plus consecutive sentences of 360 months for Count Four (use of a firearm in crimes of violence) and 120 months for Count Five. *Id.*

On June 1, 2016, the Office of the Federal Public Defender filed the instant motion on behalf of Harris, arguing that the "new rule of constitutional law" established in *Johnson v. United States*, 576 U.S. 591 (2015) applied retroactively to his case and invalidated his conviction for Count Four (the conviction under 18 U.S.C. § 924(c) that added thirty years consecutive time to his sentence). ECF 486 at 3; *see also* supplemental filings at ECF 490, ECF 518, and ECF 535. Adjudication of Harris's motion was held in abeyance pending a long series of related appellate decisions. Finally, on September 15, 2022, the Federal Public Defender withdrew from Harris's case after recommending that Harris withdraw this motion once the ensuing court decisions failed to support his argument. ECF 614, 615. Harris elected instead to proceed with his motion as a self-represented litigant. ECF 611, 616.

The § 2255 motion alleged that Harris's conviction for Count Four is invalid because his predicate convictions in Counts One, Two, and Three no longer constitute crimes of violence. ECF 486. Count Four charged use of a "firearm" (in this case the Molotov cocktails Harris threw at a

witness's home) to commit a crime of violence in violation of 18 U.S.C. § 924(c). ECF 485 at 1–3. Under § 924(c)(3), a crime of violence is an offense that is a felony and:

> (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Those two distinct provisions of § 924(c) are known as the "force clause" (subsection A) and the "residual clause" (subsection B). *See United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

In *Johnson*, the Supreme Court considered the definition of "crime of violence" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), ultimately deeming certain language unconstitutionally vague. *See Johnson*, 576 U.S. at 606. And in the subsequent case of *United States v. Davis*, 588 U.S. __; 139 S. Ct. 2319, 2324 (2019), the Court extended those principles to hold the "residual clause" of § 924(c) unconstitutionally vague. As a result of those rulings, the Government has conceded that one of the predicate counts for which Harris was convicted, conspiracy to commit witness tampering in violation of 18 U.S.C. § 371, no longer qualifies as a crime of violence and cannot be the basis for his § 924(c) conviction. ECF 626 at 4.

However, the "force clause" of § 924(c) remains in effect following those 2019 decisions. *See United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) (considering application of the force clause after *Johnson* and *Davis*). And Harris was also convicted of two other crimes of violence: witness tampering by attempted murder, as charged in Count Two, and witness tampering by physical force, as charged in Count Three. To consider the application of the force clause to those statutes, this Court must apply the "categorical approach," which looks to "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical

3

force." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (citations omitted). The definition of the crime governs, not the facts in a particular case. *See id.*

Harris's charge in Count Two, witness tampering by killing or attempting to kill, is governed by a statute that states:

> Whoever kills or attempts to kill another person, with intent to –
>
> (A)  prevent the attendance or testimony of any person in an official proceeding;
>
> (B)  prevent the production of a record, document, or other object, in an official proceeding; or
>
> (C)  prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
>
> shall be punished as provided in paragraph (3).

18 U.S.C. § 1512(a)(1). Count Three charges Harris with witness tampering by use of force or threat of force, and the governing statute provides:

> Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to –
>
> (A)  influence, delay, or prevent the testimony of any person in an official proceeding;
>
> (B)  cause or induce any person to –
>
>   (i)  withhold testimony, or withhold a record, document, or other object, from an official proceeding;
>
>   (ii)  alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;
>
>   (iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
>
>   (iv) be absent from an official proceeding to which that person has been summoned by legal process; or
>
> (C)  hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of

4

> probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

18 U.S.C. § 1512(a)(2).

Recently, the Fourth Circuit confirmed that witness tampering by murder remains a crime of violence under the "force clause" of § 924(c). In *Mathis*, 932 F.3d 242 (4th Cir. 2019), the Fourth Circuit reasoned:

> Because federal witness tampering by murder also requires the unlawful killing of another, which may be accomplished by force exerted either directly or indirectly, we find no merit in the capital defendants' challenge to their federal witness tampering convictions under 18 U.S.C. § 1512(a)(1)(C). Accordingly, we affirm the Section 924(c) convictions predicated on the capital defendants' convictions for federal witness tampering by murder, in violation of Section 1512(a)(1)(C).

*Id.* at 265 (footnote omitted). Of course, Harris's case involved witness tampering by attempted murder, not actual murder as in *Mathis*, but the force clause expressly incorporates crimes with elements charging the "attempted use . . . of physical force against a person." § 924(c)(3)(A). Harris's conviction for Count Two, then, which required a finding that he "attempt[ed] to kill" the victim, unquestionably qualifies as a predicate crime of violence under the force clause.

The analysis of Count Three is similar. The First Superseding Indictment charged that Harris "did knowingly and unlawfully use physical force and the threat of physical force, and attempted to do so, against a person, with the intent to hinder, delay, and prevent the communication" about a Federal offense. ECF 535-3 at 5. The language of that statute, § 1512(a)(2)(C), tracks exactly the language in the force clause, which requires the "use, attempted use, or threatened use of physical force against a person." 18 U.S.C. § 924(c)(3)(A). Thus, both Counts Two and Three qualify as predicate crimes of violence for Count Four under the force clause.

Focusing only on Count Two, Harris suggests that there would be ways, such as a case involving involuntary manslaughter, to violate § 1512(a)(1) with reckless, non-intentional conduct. *See* ECF 535-1 at 11–12 (arguing that §1512(a)(1) "expressly adopts the definition of 'killing' set forth in 18 U.S.C. §§ 1111 and 1112, which include the commission of involuntary manslaughter. Therefore, the most innocent conduct that can satisfy § 1512(a)(1) is involuntary manslaughter or attempted involuntary manslaughter in violation of 18 U.S.C. § 1112 [. . . which] is not a 'crime of violence' under the § 924(c)(3)(A) force clause because it can be committed with gross negligence."). Even if those definitions were adopted, this Court would turn to the modified categorical approach to determine the elements of the crime of which Harris was convicted. *See Mathis*, 953 F.3d at 264 (noting that modified categorical approach applies "[i]n a 'narrow range of cases,' involving statutes that are comprised of 'multiple, alternative versions of the crime'") (quoting *Descamps v. United States*, 570 U.S. 254, 261–62 (2013)). Considering a "divisible" statute, this Court reviews "certain underlying documents, including the indictment, to determine what crime, with what elements, formed the basis of a defendant's conviction." *Mathis*, 932 F.3d at 264 (internal citations omitted). In fact, the Fourth Circuit determined, in *Mathis*, that the witness tampering statute is divisible "[b]ecause this offense can be committed in various ways." *Id.* at 265 n.21. But in *Mathis*, the Fourth Circuit noted "we need not apply the modified categorical approach here, because the parties agree and the record establishes that the capital defendants were convicted of witness tampering by means of murder under Section 1512(a)(1)(C)." *Id.* (citing *United States v. Carthorne*, 726 F.3d 503, 512 (4th Cir. 2013). Similarly, in this case, the record establishes beyond dispute that Harris was charged with, and convicted of, intentionally attempting to kill a person with the intent to prevent that witness from contacting law enforcement. ECF 1 at 4; ECF 626-1 at 2 (jury instruction that "the first element the government must prove beyond a reasonable

6

doubt is that the defendant attempted to kill another person."). Harris was charged and convicted of attempted murder, not manslaughter. His Count Two conviction, therefore, still constitutes a crime of violence under the modified categorical approach.

Finally, Harris argues that his conviction for Count Four did not specify which of the three possible predicate convictions (Counts One, Two, or Three) the jury relied upon to find him guilty. Thus, Harris claims there is no way to tell whether the jury relied on the now-invalid predicate offense in Count One instead of the offenses in Counts Two or Three. Harris's argument is squarely foreclosed by *United States v. Said*, 26 F.4th 653 (4th Cir. 2022). In that case, the Fourth Circuit determined that at as long as the jury's verdict encompassed at least one valid predicate offense, any ambiguity about which predicate the jury relied upon would not invalidate the § 924(c) conviction. While the Court believed that the failure to ask the jury to identify a unanimous predicate constituted error, it held the error to be harmless in light of "evidence of overwhelming weight" that a valid predicate offense was committed. *Id.* at 663. Specifically, the Court reasoned that "even under the plain-error standard, 'the defendant bears the burden of showing "that the erroneous instruction given resulted in his conviction, *not merely that it was impossible to tell under which prong the jury convicted*."'" *Id.* at 661 (quoting *United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021) (internal quotation omitted)) (emphasis in original). In other words, the defendant "'must show not only that he *could* have been convicted under the erroneous . . . instruction, but also that he was *not* convicted under the' proper instruction." *Id.* (quoting *United States v. Robinson*, 627 F.3d 941, 955 (4th Cir. 2010) (emphasis in original)).

Like in *Said*, the jury in Harris's case found him guilty not only of the use of a firearm to commit crimes of violence, but of several substantive offenses all involving his use of the firearms (Molotov cocktails) to firebomb the witness's home. Harris, like Said, "has pointed to nothing to

7

eliminate the commonsense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924" charge in Count Four. *Said*, 26 F.4th at 664. The notion that "even a single juror relied solely on the conspiracy charge[], rather than the other violent crimes *of which the jury unanimously*" convicted Harris, "simply strains credulity." *Id.* at 665 (emphasis in original). Because Harris cannot establish that any juror relied solely on the conspiracy charge in light of his unanimous conviction for the other substantive offenses, *Said* precludes the relief he requests.[2]

## CERTIFICATE OF APPEALABILITY

This Court must "issue or deny a certificate of appealability when it issues a final order adverse to the applicant." See Rule 11(a) of the Rules Governing § 2255 Cases. A certificate of appealability is a jurisdictional prerequisite to an appeal from this Court's order, and should issue only where there has been "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered the record and finds that Harris has not made the requisite showing by demonstrating that reasonable jurists would find this Court's assessment of the claim debatable or incorrect. *See, e.g., Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001). Accordingly, a certificate of appealability is denied.

A separate Order denying Harris's motion, ECF 486, follows.

---

[2] In his reply, Harris argues that the Fourth Circuit in *Said* used the permissive word "may" to indicate that the District Court would have discretion to grant the relief he seeks. ECF 643. Specifically, he relies on the sentence, "Nevertheless, a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate." ECF 643 at 2 (citing *Said*, 26 F.4th at 659). This Court disagrees with Harris's reading of that sentence, as there is nothing else in the opinion to suggest that the Fourth Circuit was intending to give a district court discretion to overlook whether a petitioner met his burden to show prejudicial error. In fact, the ruling in *Said* reversed the district court's grant of habeas relief because Said had not made the requisite showing.

Dated: June 22, 2023

/s/

Stephanie A. Gallagher
United States District Judge

9